IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MEGHAN L. FASHJIAN, <br><br> Plaintiff, <br><br> v. <br><br> ALASKA RADIOLOGY ASSOCIATES, INC., <br><br> Defendant. | Case No. 3:18-cv-00110-TMB <br><br><br> **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 28)** |

## I. INTRODUCTION

The matter comes before the Court on Defendant Alaska Radiology Associates, Inc.'s Motion for Summary Judgment (the "Motion").[1] The Motion has been fully briefed and the Parties did not request oral argument.[2] Based on the record before the Court and for the reasons discussed below, Defendant's Motion is **GRANTED**.

## II. BACKGROUND

On December 20, 2017, Plaintiff Meghan L. Fashjian filed a Complaint in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[3] Plaintiff alleges that she began working as a Nurse Practitioner for Defendant, a physician-owned, private radiology group, on or about June 27, 2016.[4] Plaintiff further alleges that Dr. Inampudi, one of Defendant's owners and one of Plaintiff's supervisors, "immediately showed hostility" toward Plaintiff, treating her "in a

---

[1] Dkt. 28 (Motion).

[2] Dkts. 40 (Opposition); 42 (Reply).

[3] Dkt. 1-1 (Complaint).

[4] *Id.* at 1; Dkt. 28 at 7.

1

hostile, demeaning manner, that disparately impacted the terms and conditions of her employment."[5] Plaintiff believes that she was treated differently due to her gender and complained to Dr. Coyle, President and another owner of Defendant.[6] Plaintiff alleges that, in response to her complaints, "Dr. Coyle offered to allow her to terminate her contract and leave the job rather than attempt to correct Dr. Inampudi's conduct."[7] According to Plaintiff, Dr. Coyle fired her when she decided to pursue a resolution to her complaint against Dr. Inampudi instead of resigning.[8]

The Complaint explicitly lists a single cause of action under the heading "Gender Based Discrimination against Meghan Fashjian: 42 U.S.C. § 2000E-2(A)."[9] In support of this claim, Plaintiff argues that Defendant "permitted Dr. Inampudi to treat her in a disparate way, based on her gender."[10] Plaintiff then argues that she was terminated from employment in retaliation "after she complained about the gender based harassment that she was experiencing by Dr. Inampudi."[11] Plaintiff claims that she suffered a variety of injuries as a result and requests damages, attorney's fees, and costs of suit.[12]

---

[5] Dkt. 1-1 at 2–3.

[6] *Id.* at 3.

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.* at 5.

[11] *Id.*

[12] *Id.* at 5–6.

On May 2, 2018, Defendant removed the case to this Court and filed an Answer.[13] On October 4, 2019, Defendant filed the present Motion.[14] In the Motion, Defendant interprets the Complaint to raise three possible violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), specifically: (1) disparate treatment; (2) hostile work environment; and (3) retaliation.[15] Defendant argues that all three claims fail as a matter of law.[16] Contrary to Plaintiff's allegations, Defendant asserts that Plaintiff's attitude and performance, including resisting physician instructions, "most negatively impacted her work."[17] According to Defendant, Plaintiff did not make a specific allegation of misconduct based on gender until after Dr. Coyle had discussed "amicably voiding her employment contract."[18] Defendant argues, "Plaintiff cannot demonstrate that <u>but for</u> her general complaints about Dr. Inampudi's supervision, she would not have been discharged, given the clear record of significant concerns about her attitude and conduct . . . ."[19] Therefore, Defendant concludes that Plaintiff fails to make a *prima facie* case for each of the three possible claims and summary judgment should be granted in Defendant's favor.[20]

---

[13] Dkts. 1 (Notice of Removal); 3 (Answer).

[14] Dkt. 28.

[15] *Id.* at 19.

[16] *Id.* at 19–34.

[17] *Id.* at 9.

[18] *Id.* at 15–16.

[19] *Id.* at 33.

[20] *Id.* at 35.

Plaintiff filed her Opposition on November 5, 2019 and clarifies that she is only pursuing a retaliation claim under Title VII.[21] Plaintiff argues that, in a "battle of affidavits," the credibility of witnesses and the "substantial internal contradictions" presented by Defendant must be presented and decided at trial.[22] Plaintiff takes issue with the affidavits submitted by Defendant, arguing that they contain hearsay, share identical statements without specificity, present inconsistencies, and lack substantiating evidence.[23] In addition, Plaintiff contends that Dr. Coyle's affidavit raises factual disputes as to the timeline of his investigation into Plaintiff's allegations against Dr. Inampudi.[24] Plaintiff argues that Defendant's Motion must be denied in light of the differences between Plaintiff's and Defendant's versions of the timeline.[25]

In the Reply, Defendant argues that Plaintiff has failed to meet the elements of a Title VII retaliation claim.[26] Defendant claims that Plaintiff's supervising physicians had already fostered concerns about Plaintiff's attitude and job performance before she brought any complaints against Dr. Inampudi.[27] Defendant therefore argues that a retaliation claim fails because, prior to her discrimination claims, Defendant had decided to terminate Plaintiff based on her conduct.[28]

---

[21] Dkt. 40 at 2–3 ("For the sake of clarification to ARA, and this Court, Fashjian is not seeking remedy for discrimination or hostile work environment in this lawsuit. . . . Ms. Fashjian's claim is alleging that she was wrongfully terminated in *retaliation* for complaining of gender discrimination.") (emphasis in original).

[22] *Id.* at 16–17.

[23] *Id.* at 17–21.

[24] *Id.* at 21–23.

[25] *Id.* at 23.

[26] Dkt. 42 at 2, 11–19.

[27] *Id.* at 4–10.

[28] *Id.* at 10.

Moreover, Defendant argues that, despite the timeline at issue, Plaintiff cannot meet her burden to show that her complaint was the but for cause of her termination and she has failed to refute Defendant's stated reasons for her termination.[29] Therefore, Defendant again asserts that Plaintiff's retaliation claim fail as a matter of law.[30]

### III. LEGAL STANDARD

*A. Summary Judgment*

A party may move for summary judgment on a claim, a defense, or a part of either under Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate where, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party,[31] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] Material facts are those which might affect the outcome of the case.[33] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34] "There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party

---

[29] *Id.* at 12–19.

[30] *Id.* at 19.

[31] *Scott v. Harris*, 550 U.S. 372, 379 (2007).

[32] Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Jensinger v. Nev. F. Credit Union*, 24 F.3d 1127, 1130-31 (9th Cir. 1994).

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[34] *Id*.

opposing the motion." [35] A movant's burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[36] Thus, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[37]

Once a movant has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial.[38] Evidence introduced in opposition to a summary judgment motion does not have to be admissible at trial; the permissible evidence is identified in Fed. R. Civ. P. 56(c).[39] However, "conclusory assertions are wholly insufficient to sustain either the [moving party's] burden or the district court's grant of summary judgment."[40] Moreover, "[a] party opposing a summary judgment motion must produce

---

[35] *Mills v. Wood*, No. 4:10-CV-00033-RRB, 2015 WL 2100849, at *1 (D. Alaska May 6, 2015), *aff'd in part*, 726 F. App'x 631 (9th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[36] *Celotex*, 477 U.S. at 325.

[37] *Anderson*, 477 U.S. at 249.

[38] *Celotex*, at 323–24.

[39] *See*, *e.g.*, *id.*; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

[40] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990). *See also Hilsinger v. Enerco Group, Inc.*, No. 3:13-cv-00003-TMB, 2014 WL 12569381 (D. Alaska Sept. 3, 2014); *Mills*, 2015 WL 2100849, at *1 (citing *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1036 (9th Cir. 2005) and *Walker*, 917 F.2d at 387 ("In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses . . . However, this rule does not apply to conclusory statements unsupported by underlying facts.")).

'*specific* facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative as to any [material] fact claimed to be disputed.'"[41]

B. Retaliation Claim under Title VII

Under Title VII, it is unlawful for an employer to discriminate against any employee because that employee "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."[42] To make a *prima facie* showing of retaliation, a plaintiff must establish: "(1) that she was engaging in protected activity/opposition, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision."[43] Under the third factor, the plaintiff must show that the adverse employment decision would not have occurred "in the absence of—that is, but for—" the protected activity.[44] "Once a *prima facie* case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons."[45] A plaintiff can then rebut the defendant employer's proffered reason by direct evidence—*i.e.*, "specific,

---

[41] *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (quoting *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir. 1979)).

[42] 42 U.S.C. § 2000e-3(a).

[43] *Folkerson v. Circus Circus Enter., Inc.*, 107 F.3d 754, 755 (9th Cir. 1997) (citing *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994)). See also *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)); *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)).

[44] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013) (holding that the language "because of" found in Title VII's anti-retaliation provision required a "but for" causation standard).

[45] *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (citing *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994)).

substantial evidence of pretext,"[46]—or by circumstantial evidence consisting of "more than a mere refutation of the employer's legitimate reason and a mere assertion that the discriminatory reason must be the cause of the firing."[47]

## IV.   ANALYSIS

Defendant now moves for summary judgment, arguing that Plaintiff failed to meet "her burden of demonstrating that her employment would not have been terminated but for her vague alleged assertion to Dr. Coyle and Mr. Hinger that Dr. Inampudi was misogynistic."[48] Applying the three-element framework for a retaliation claim, the first two elements are not at issue here. The Parties do not dispute that Plaintiff's complaint against Dr. Inampudi would be a protected activity or that termination could be an adverse employment action. Plaintiff argues that her complaint caused Defendant to terminate her employment and focuses on establishing "a timeline wherein she engaged in protected activity, and *then* suffered an adverse employment act."[49] Not only does Defendant disagree with Plaintiff's timeline of events, Defendant also contends that the retaliation claim fails because Plaintiff's employment was terminated for "legitimate, non-discriminatory reasons."[50]

---

[46] *Id.* (citing *Bradley v. Harcourt, Brace, & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)).

[47] *Id.* (citing *Wrighten v. Metro. Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984) and *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994)).

[48] Dk. 28 at 31.

[49] Dkt. 40 at 15.

[50] Dkt. 42 at 13,15.

8

## A. Prima Facie Showing of Retaliation

To establish a *prima facie* case for retaliation, a plaintiff must demonstrate the causal link between a protected activity and an adverse employment action.[51] The causation element may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."[52] "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."[53] However, this is not an absolute rule and the inference does not follow automatically, but rather, "courts must consider the surrounding circumstances."[54]

In this case, Plaintiff has failed to establish a *prima facie* case because Plaintiff has failed to show the necessary causal link to sustain her retaliation claim. Plaintiff alleges that the first time she lodged an official complaint about discrimination by Dr. Inampudi was during a meeting with Dr. Coyle on August 24, 2016.[55] Plaintiff concludes that Defendant terminated her employment shortly thereafter in response to her complaint.[56] Plaintiff relies on the proximity in time between

---

[51] *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).

[52] *Id.* at 1376.

[53] *Bell v. Clackamas County*, 341 F.3d 858, 866 (9th Cir. 2003).

[54] *Lillie v. ManTech Int'l Corp.*, No. 2:17-cv-02538-CAS-SS, 2018 WL 6133706, at *8 (C.D. Cal. Sept. 24, 2018) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)).

[55] Dkts. 1-1 at 3; 29-1 at 45–46 (Deposition Transcript); 39 at 6 (Affidavit). Dr. Coyle avers that during this meeting, Plaintiff complained about Dr. Inampudi's general condescending treatment but did not allege specific gender-based harassment or discrimination. Dkt. 32 at 5. The Court views the evidence in the light most favorable to Plaintiff, as the nonmoving party, and discusses the relevance of this meeting from Plaintiff's perspective.

[56] Dkt. 1-1 at 3, 5.

her complaint and the termination in isolation; Plaintiff has not provided any other evidence of causation or addressed the surrounding context.

On the other hand, Defendant asserts and the record shows that Defendant's physician-owners were already discussing Plaintiff's behavior and performance prior to the August 24, 2016 meeting. It is uncontested that Plaintiff's supervising physicians were frustrated from the very start of Plaintiff's employment by the delay in her credentialing, which prevented Plaintiff from performing certain aspects of her job.[57] The record also shows that the physicians expressed concern regarding Plaintiff's attitude toward her job as early as August 9, 2016.[58] On August 18, 2016, Dr. Inampudi and Dr. Reed, another physician-owner who supervised Plaintiff, exchanged emails with Ward Hinger, Defendant's Chief Administrative Officer, and Dr. Coyle.[59] Dr. Inampudi wrote, "[Plaintiff] is continuing to have attitude issues. I think she is competent but in my opinion she is not a team player. . . . she certainly can't take this job and her employers for granted."[60] In response, Dr. Reed agreed and suggested, "Something has to change, frankly we don't need her if this is the way she's going to act up here."[61]

On August 20, 2016, Dr. Inampudi and Dr. Reed followed up with additional examples and details of Plaintiff's behavior.[62] In summary, the physicians claimed that Plaintiff was not

---

[57] *See* Dkts. 28 at 9; 40 at 5–6.

[58] *See* Dkt. 31-1 at 1 (Email). Dr. Reed recalls that August 9, 2016 was the second time he spoke with Dr. Coyle "about [Plaintiff's] attitude and [his] concern that she was not a team player."

[59] Dkts. 30-2 (Email); 31-2 (Email).

[60] Dkt. 30-2 at 1.

[61] Dkt. 31-2 at 1.

[62] Dkt. 31-1.

being proactive with her responsibilities or completing assignments as instructed by the supervising physician.[63] During this exchange, Dr. Reed proposed, "We might ask her straight out if she is happy here and if she see's [*sic*] herself settling into this position, working FOR physicians with a positive attitude. If she does not, we might want to help her find her way."[64]

Even in Plaintiff's timeline of events, following the initial August 24, 2016 meeting, the meetings with management did not concern her complaints against Dr. Inampudi. Instead, at a meeting on August 30, 2016, Dr. Coyle "shifted the focus of the discussion toward whether [Plaintiff] was 'happy'" and "suggested that he would be willing to void [Plaintiff's] contract, should [she] decide to resign."[65] At a meeting on September 13, 2016, "Dr. Coyle states that [Plaintiff] should resign, because it seemed [Plaintiff] was not a good fit."[66] Finally, on September 16, 2016, Plaintiff was given the choice to resign or be fired.[67] There was no mention of Plaintiff's allegations against Dr. Inampudi during these meetings and Plaintiff does not contest Defendant's representation of her conduct.

Given this broader context established by the record as a whole, Plaintiff fails to provide sufficient evidence that Defendant terminated Plaintiff's employment because she complained about Dr. Inampudi. Therefore, Plaintiff has not made a *prima facie* showing of retaliation under Title VII.

---

[63] *Id.*

[64] *Id.* at 2.

[65] Dkt. 39 at 6.

[66] *Id.* at 7.

[67] *Id.*

11

B. *Defendant's Legitimate Reason for Terminating Plaintiff's Employment*

In the event a plaintiff establishes a *prima facie* case of retaliation, it becomes the defendant's burden to show that the adverse action was taken for a legitimate reason, an assertion which the plaintiff may then refute with additional evidence.[68] To demonstrate that the defendant's stated reason is pretext, the plaintiff "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible."[69] Merely denying the credibility of the defendant's witnesses is not sufficient.[70] Summary judgment is appropriate where evidence to refute the defendant's legitimate explanation is totally lacking.[71]

Even if Plaintiff had satisfied the elements of a retaliation claim—which the Court is not persuaded she has—Plaintiff has not met her burden to show that Defendant's stated reasons for her termination were a pretext for discrimination. In this case, Defendant has asserted a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff's attitude and job performance did not meet Defendant's expectations.[72] Plaintiff does not proffer any evidence to refute those assertions, *i.e.*, evidence that she received positive evaluations. Plaintiff even admits that certain instances of insubordination cited by Defendant occurred.[73] For example, in one instance, Dr. Inampudi asked Plaintiff to handwrite additional notes on a consent form to review

---

[68] *See Little*, 301 F.3d at 969.

[69] *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).

[70] *Wallis*, 26 F.3d at 890 (quoting *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986)).

[71] *Id.*

[72] *See* Dkt. 28 at 33.

[73] Dkt. 29 at 25–30.

with a patient; Plaintiff refused, citing that the forms were preprinted and preapproved.[74] While Defendant claims to have terminated Plaintiff's employment for failure to follow instructions, Plaintiff admits that she declined to perform certain tasks because "it wasn't [her] job."[75]

Rather than proving pretext, Plaintiff seeks to defeat the Motion by asserting factual disputes remain at issue. Plaintiff argues that Defendant's Motion rests on "substantial internal contradictions" and that "[a] trier of fact must be allowed to judge the credibility of the witnesses presented by the parties."[76] As cited above, Plaintiff must allege specific facts and produce evidence weighing on the witness's credibility.[77] Here, Plaintiff simply questions, without providing any evidence, whether Defendant truly considered terminating Plaintiff's employment prior to August 24, 2016.[78] Plaintiff's contention regarding the timing of her resignation and the timeline established by Dr Coyle's affidavit is inapposite.[79] Only facts tending to prove or disprove the causal link between Plaintiff's allegations and her termination are material at this point. Plaintiff fails to produce evidence of causation or evidence that Defendant's stated reasons for her termination are pretext.

In summary, Plaintiff has not made a *prima facie* case for retaliation. Moreover, Defendant provides legitimate reasons for her firing and Plaintiff does not successfully refute Defendant's

---

[74] *Compare* Dkt. 30 at 2 *and* Dkt. 32 at 4 *with* Dkt. 29 at 28.

[75] Dkt. 29 at 25, 29.

[76] Dkt. 40 at 16.

[77] *Lindahl*, 930 F.2d at 1438.

[78] Dkt. 40 at 17–19.

[79] *See id.* at 20–23. Plaintiff's assertion that she was replaced by a male employee is also irrelevant to the elements of a retaliation claim.

reasons as pretext. As a result, there are no issues of material fact remaining and Plaintiff's retaliation claim fails as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Motion at docket 28 is **GRANTED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 7th day of January, 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE